## CALVERY v. LIBERTY INDUSTRIAL LIFE INS. CO.

No. 17316.

Court of Appeal of Louisiana. Orleans.

April 8, 1940.

E. B. Charbonnet, Jr., of New Orleans, for appellant.

Charles J. Mundy, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit for the proceeds of a policy of industrial life insurance. The plaintiff, Zion Calvery, is the father of the insured, Clarence Calvery, who died on February 7, 1939. It is alleged that the beneficiary originally designated died before the death of the insured and that no other beneficiary has been named and that, therefore, plaintiff, as the father and sole heir-at-law of the deceased insured, has, by judgment of the Civil District Court for the Parish of Orleans, been recognized and sent into possession of the

estate of the said insured, and particularly of the proceeds of this policy.

Though no premium payments had been made since May 6, 1935, it is alleged and, we may say here, is not denied, that at the time of the discontinuance of payments, there had accumulated a reserve sufficient, if applied in accordance with the requirements of Act 193 of 1906, to continue the policy in full force beyond the date of the death of the insured.

The insurance company excepted to the petition, contending that it discloses no cause of action and that the suit is premature. The exception of no cause of action, as, unfortunately, is legally permissible, does not contain a statement showing the ground on which it is based, and, since the matter was submitted to us without the benefit of oral argument, we have no means of ascertaining exactly just what is the foundation of the exception. But we find in the brief of defendant-appellant the following question: "Has plaintiff shown a cause of action in the absence of proof that the beneficiary predeceased the insured?"

We assume from this that the exception of no cause of action had, as its object, the challenging, in some way, of the right of the heir-at-law to claim the proceeds of the policy in view of the fact that some other person was designated as beneficiary in the policy itself. We notice, also, that though the policy was issued in the name of Clarence Calvery, the proof of death which was submitted by the plaintiff shows the death of Clarence "Calvin". The allegation in the petition is that Clarence "Calvery" died and, since, in considering the exception of no cause of action, it is necessary that the allegations of the petition be taken as true, we do not see that the error in the death certificate could be availed of by way of exception of no cause of action, and, as a matter of fact, this error does not seem to form any part of the basis for the exception of no cause of action, nor the basis of any other contention by defendant.

The other exception—that of prematurity—which seems to be strenuously urged, is based on the fact that the plaintiff, when he made claim for the proceeds, did not surrender to the insurance company the policy itself and the premium receipt book. This is said by exceptor to be necessary since the policy itself contains a stipulation (numbered 10) reading as follows: "This Policy and the premium receipt book pertaining thereto shall be exhibited to the officers or authorized employees of the Company at any time upon demand; and before any payment for death can be claimed under this Policy, said Policy and receipt book shall be surrendered to the Company."

We may say here that it is the contention of exceptor that this requirement is not complied with by the surrender of the policy and receipt book at the time of the acceptance of payment, but that these documents must be surrendered at the time claim is made and that they must be left with the company during the time within which it may determine whether to recognize the claim or to reject it.

No answer was filed by the defendant and, accordingly, the case went to trial apparently on the issues raised by these exceptions. Plaintiff then offered the policy and the premium receipt book and the record numbered 230,952 of the Civil District Court for the Parish of Orleans in the proceeding entitled "Succession of Clarence Calvery". This record shows the death of Calvery and that the present plaintiff, Zion Calvery, was recognized and sent into possession of the estate of the deceased and particularly of the proceeds of the policy which is involved here. Defendant then offered various letters which had passed between the attorney for the present plaintiff and the defendant-insurer and these letters show plainly that the plaintiff had submitted proof of death and stated to the insurer that he was willing that the said insurer should inspect the policy and the premium receipt book, but that he was not willing to deliver these documents to the insurer except upon receipt of the proceeds of the policy.

On this proof judgment was rendered in favor of plaintiff for the face amount of the policy, $158, with interest at 6 per cent. from the date of the death of the insured, and from this judgment defendant has appealed.

The exception of no cause of action is not well founded. The allegation of the petition is that the previously named beneficiary had died before the death of the insured and that is all that is necessary to be taken into consideration in connection with the exception of no cause of action. As a matter of fact, when the proof was offered on the trial of the case,

as we have said, the record in the Succession of Clarence Calvery was offered in evidence, and this record contains a death certificate showing that the previously named beneficiary, to-wit, Victoria Calvery, died on June 6, 1935, several years before the death of the insured. In the absence of any proof to the contrary, this certificate, we think, is sufficient to show that the beneficiary died prior to the death of the insured.

When we come to consider the question raised by the exception of prematurity, we find ourselves unable to agree with the contention of the exceptor. It seems to us that the plaintiff did all that could be reasonably required of him in offering to submit the policy and premium receipt book for inspection and that he could not be required to surrender those documents to the company unless and until the company should agree to make payment of the claim. It may be perfectly reasonable to require the holder of a policy to submit the policy for examination and inspection, but it is, we think, entirely unreasonable to require that the policy be surrendered before the insurer has agreed to accept liability thereunder.

We considered a somewhat similar situation in the case of Smooth v. Metropolitan Life Insurance Company, La.App., 157 So. 298, 300. The policies which were involved there stipulated that payment would be made "upon surrender of this policy". Plaintiff found it impossible to surrender the policy, which had been lost. We said: "That the policies have not been surrendered is of no importance. Life insurance policies are not negotiable instruments; rights thereunder do not pass by transfer of the policies themselves, and since, we hold that, Smooth is entitled to claim the proceeds, no further protection is necessary than that the insurer show that payment has been paid in accordance with our decree."

Defendant seeks to distinguish that case on the theory that there the question was whether, when a policy had been actually lost, the person entitled to the proceeds is deprived of his rights by reason of that loss, and it is true that that is all that we considered there. But here we are of the opinion that the policy stipulation relied upon is not binding and that all that can reasonably be required is the right to inspect the policy and the premium receipt book and the right to require surrender of the policy when payment is made.

The final contention of the defendant is that the judgment erroneously allows interest at 6 per cent. from the date of the death of the insured on February 7, 1939. We feel that the interest which is allowed as a penalty by Act 17 of 1920 should be awarded to plaintiff in this case because we cannot avoid the impression that refusal to pay was not based on any just cause. However, even that statute provides that the interest, which is fixed at 6 per cent., shall commence to run "from date of receipt of due proof of death", and it is shown here that due proof of death was not submitted until May 17, 1939. Accordingly, the judgment must be amended to that extent.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended to the extent that the 6 per cent. per annum interest allowed shall run from May 17, 1939, instead of from February 7, 1939, and that the judgment, in all other respects, be and it is affirmed. Appellant to pay all costs.

Amended and affirmed.

McCALEB, J., absent, took no part.